[No. 23269. Department One. February 8, 1932.]

ANDREW GATTAVARA, *a minor, by V. Gattavara, his guardian ad litem, Respondent,* v. MABEL LUNDIN *et al., Appellants.*[1]

[1]Reported in 7 P. (2d) 958.

*Robert M. Burgunder, Arthur M. Hare, Edwin H. Flick,* and *Herald A. O'Neill,* for appellants.

*Arthur A. Lafromboise* and *Arthur E. Griffin,* for respondent.

MITCHELL, J.—Andrew Gattavara, ten and one-half years of age, while attending school at Enumclaw, was injured during an afternoon recess, a few feet outside of the outer door of the school building, by being struck by an automobile driven by Mabel Lundin, one of the teachers.

The school building, three stories high, faces east. The rear wall of it runs northerly, from which an engine room built with square corners projects out some eleven or twelve feet. The door from the main building to the boys' play ground is south of and near the south wall of the engine room. From the door, a walkway was maintained near and parallel with the south wall of the engine room, which walkway intersects at right angles a driveway running northerly near and parallel with the west wall of the engine room. An outside recess in the wall north of the engine room

was used as a parking space for automobiles belonging to teachers and the janitor.

At an afternoon recess period, while the boys were coming out of the building, many being already outside in the play ground beyond the driveway, Mabel Lundin took her car from the parking place referred to, and driving four or five miles an hour, collided with the plaintiff near the corner of the engine room as he came along the walkway sideways or nearly backwards hurriedly out of the building, engaged at the time in play with another boy. He brought this suit against the teacher who drove the automobile, and also against the school district, charging that plaintiff's injuries were caused by the careless and negligent driving by the teacher, and also by the negligence of the school district, among other things, in failing to have the premises supervised and guarded at the time the accident occurred.

The defendants appeared separately in the action. The school district denied all liability, and affirmatively pled contributory negligence, which affirmative defense was denied by a reply. The verdict of the jury was for the plaintiff and against both defendants. The school district filed a motion for judgment notwithstanding the verdict and one for a new trial, both of which were denied. The school district has appealed from a judgment on the verdict.

Appellant assigns as error the denial of its motions seasonably made several times during the trial challenging the sufficiency of the evidence to justify any verdict against it. Counsel for appellant have elaborately argued a number of questions which, in our opinion, are not important, because of the conclusion we reach on the controlling question in this case, and which is involved in these assignments, viz: the suffi-

ciency of the evidence to take the case to the jury with respect to the negligence of the school district in failing to supervise the school grounds, as one of the contributing causes of the accident.

The court in instructing the jury, after defining "proximate cause" charged the jury according to instruction No. 4 as follows:

"The term 'proximate cause' means that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened.

"I further charge you that there may be more than one proximate cause for the same injury. The negligence of different persons, though otherwise independent, may concur in producing the same injury, and in such a case all whose negligence concur in producing the same injury are liable to a person injured who was exercising due care for his own safety.

"In this case therefore, if you find that plaintiff was exercising due care for his own safety, and that the sole proximate cause of the injury was the alleged negligence of Mabel Lundin, your verdict should be against Mabel Lundin alone; or, if you find that plaintiff was exercising due care for his own safety and that the sole proximate cause of the injury was the alleged negligence of the school district, then your verdict should be against the school district alone; or, if you find that plaintiff was exercising due care for his own safety and that the alleged negligence of both defendants concurred in proximately causing the injury, your verdict should be against both defendants."

The only exception to this instruction was to the effect that the school district could not be held solely liable, that "there could not be a sole proximate cause attributable to the school district alone under the evidence." All of the rest of the instruction therefore was accepted by the appellant as the law of the case. The portion excepted to need not be further noticed, because it is unimportant under the facts in this case,

and particularly unimportant because the verdict and judgment were not solely against the school district, but against both defendants.

In addition to that portion of instruction No. 4 to which no exception was taken, the jury was instructed that,

"If the defendant school district exercised such care in the maintenance, use and supervision of its grounds as an ordinarily reasonable and prudent person would exercise under the same or similar circumstances, then your verdict must be for the school district."

There was abundant evidence to show that there were some five hundred students in the school; and that, at all recesses, including the afternoon recess of eight minutes, during the school day the school premises and play grounds were required by common and well understood rules to be under the supervision and care of the officers and teachers of the school, such work being divided among them by assignments. Upon the call of a recess, all of the teachers, other than those who were to supervise the grounds, conducted their pupils in an orderly way to the hall downstairs where the children were discharged to go to play. That was done on this occasion. "But the teacher that was designated for yard duty, *she dismissed her room first,*" so the testimony showed. Further, the superintendent of city schools, whose duty it was to prepare, promulgate and enforce the rules, testified:

"Well the teachers, of course, were supposed to take their own rooms out, except those who were on duty and as soon as they *started* their rooms they would go to their duty stations."

That is, teachers who had to supervise the grounds would leave their pupils as soon as they were started instead of conducting them to the hall downstairs.

It is clear from the evidence that all of the teachers were conversant with these rules. The teacher whose duty it was to watch the grounds at the time this accident occurred had been a teacher at this school three years and knew the rules.

The driveway was in no way forbidden, and was used from time to time, even during recess periods, by oil and coal trucks, grocery and milk wagons, school teachers' and janitors' automobiles, and for a while by two students' automobiles. The superintendent testified that he had driven over them during recess periods, and that to his knowledge delivery cars had, also.

Mabel Lundin knew that a teacher was not allowed to leave the school grounds at that time of the day without special permission. Desiring to leave during that recess for a purpose in no way connected with the school or her duties as a teacher, upon the call for recess she took her class down, whether from the second or third floor does not appear, then went upstairs to get permission of the principal to leave the grounds. He was not in. She could not find him. She then came down, went out, got into her automobile, backed it out, started forward, going four or five miles an hour, and collided with the boy at or near the corner of the engine room.

The teacher whose duty it was to supervise that side of the building at that time, had been connected with the school three years, knew the rules, and knew she was to do yard duty on the boys' side of the grounds at that recess period. She did not leave her pupils, as soon as she got them started from the class room, to go to her station on the grounds, but came down with them; and, while under a leading question on behalf of the district she said she got out on the yard quickly,

yet it was a fact, according to her own testimony, that she did not get down on the yard until after a great many boys had already got out into the play field, until after Miss Lundin, who had been delayed by going upstairs and returning, got her car out, had the accident, and until *after* they had taken the injured boy upstairs. No one else was assigned or engaged in the supervision of the grounds on that side at that time.

Under this evidence, the question of whether or not the school district exercised such care in the maintenance, use and supervision of the grounds as an ordinarily reasonable and prudent person would have exercised under the same or similar circumstances, and whether or not such negligence, if any, contributed as a proximate cause to the accident, were questions for the jury. Appellants' motions to the contrary, upon which these assignments rest, were properly denied.

■ An instruction to the effect that principals and teachers in charge of school grounds were, for the purpose of keeping the grounds reasonably safe, the agents of the school district, and that their knowledge of the use of vehicles across the grounds during the school hours was the knowledge of the school district in this respect, is assigned as error. The instruction was proper. *Bruenn v. North Yakima School District No. 7,* 101 Wash. 374, 172 Pac. 569; *Rice v. School District 302, Pierce Co.,* 140 Wash. 189, 248 Pac. 388.

The giving of two other instructions, nominally assigned as errors, are not discussed in the brief and require no further consideration here.

■ Under an assignment, it is contended that the verdict of eight thousand dollars was excessive. The trial court did not think so. The boy was of considerable promise, mentally and physically. He was seriously injured, having lost a substantial part of his skull that nature will not reestablish; a permanent

injury to a nerve affects his vision so that the boy will always require the use of heavy glasses; his injuries have required several surgical operations.; and he has suffered great pain, which continued appreciably and frequently down to the date of the trial, nearly two years after the injuries were sustained, and were certain to continue for an uncertain period. His injuries and suffering were indicated in a way by the proof that his surgeons', hospital and nurses' bills already amount to nearly one-fourth of the amount of the verdict. This assignment is without merit.

Lastly, it is claimed that the boy was guilty of contributory negligence to the extent that it should be so declared as a matter of law. On the contrary, a fair consideration of the evidence, as the jury had a right to view it, pictured this boy's conduct as nothing more than nor different from that of the average school boy of his age under the same or similar circumstances.

Judgment affirmed.

PARKER, BEELER, and HERMAN, JJ., concur.

TOLMAN, C. J. (dissenting)—I am unable to concur in the views expressed by the majority. If I correctly grasp the majority opinion and the principle upon which it rests, it is, in my judgment, based entirely upon the supposed negligence of the school district in failing to supervise the school grounds, without any reference to any known special danger created by, or permitted to exist with the knowledge and consent of, the school district, and without any knowledge of the peculiar circumstances which, at the particular time, co-operated to cause the accident.

In other words, the majority does not hold, and I presume the record does not justify it in holding, that the driveway, as located, together with the parking of automobiles as indicated, were either or both combined

of a negligent nature creating a condition calling for special care; or that the movement of the car by the teacher at the particular time, without consent and in violation of the rules, was, in the absence of knowledge of the district, a condition for which it would be responsible. In other words, the decision, eliminating these features, seems to contemplate only the ordinary supervision of the usual and customary school playground.

If I am correct in the conclusion above indicated, then the holding of the majority makes the school district an absolute insurer, because it puts upon the district the absolute imperative duty of having an eye and a hand of the supervisor at the immediate point of danger in time to save the child. Such a duty is one to be ascribed only to the Deity, and is beyond human power to perform. It is requiring the impossible and the unreasonable, and to conform to such a ruling, school districts must absolutely eliminate all playgrounds.

If a school district provides for a general supervision such as is reasonable under all of the circumstances and conditions, and by its rules and directions appoints competent supervisors and fixes their duty with such reasonable care as to insure a reasonable supervision of the children and of the grounds, it would seem to me that it has performed its full duty. Naturally, a supervisor cannot have his eye on every spot at the same time; nor can he have his hand on every child to restrain him at every instant. The supervisor must be where he can see generally, and where he can be reached and his attention drawn to anything occurring of an unusual nature. To go further is to require a supervisor for every child at all times. It is a well-known fact that children in their play are prone

to injure themselves and each other; and to prevent all accidents to children while at play is beyond human capacity.

It is indicated by the majority that the supervisor on this occasion did not get into the yard as quickly as she should. There was no showing that she was not detained by other matters to which a supervisor should give attention. But whether that be so or not, unless there was something to call her attention to the danger at this particular spot at this particular moment, no reason appears why she should be there, in any event, rather than at any other place on the grounds. In other words, she was not advised that the automobile was to be moved over the drive at that particular time. She may have been advised of conditions requiring her presence elsewhere, and I can see no reason why she should have been at the point of the accident the instant before it occurred, rather than at any other place on the school grounds, all of which she was required to supervise.

Unless the supervisor had been at the immediate spot at the immediate moment in time to stop the automobile, stop the boy, or forcibly snatch him from the path of danger, the accident would still have occurred just as it did. Should a jury be permitted to say that, because the supervisor was not at that particular spot at that particular moment, she was so remiss in her duties as to render the school district liable under the rule of *respondeat superior?*

I fear the majority has made school districts insurers of the safety of all school children while on the school property—a rule to which I can not give assent; and I therefore dissent.