[No. 30330. Department One. January 14, 1949.]

EUGENE BRISCOE, *by Milton Briscoe, his Guardian ad Litem, Appellant,* v. SCHOOL DISTRICT NO. 123, GRAYS HARBOR COUNTY, *Respondent.*[1]

[1]Reported in 201 P. (2d) 697.

*F. W. Loomis*, for appellant.

*Donn F. Lawwill*, for respondent.

Steinert, J.—Plaintiff, through his guardian *ad litem*, brought suit to recover damages for personal injuries sustained by him while engaged in playing an athletic game with fellow students upon the school grounds of the defendant school district. He alleged in his complaint that the defendant had been negligent, in that it had failed to provide proper supervision of group play in progress on the school premises during an afternoon recess period, and that such negligence was the proximate cause of the injury which he then and there sustained.

The defendant demurred to the complaint, and, upon stipulation of counsel, the court entered an order overruling the demurrer.

In its answer, subsequently filed, the defendant admitted that the plaintiff had sustained certain injuries while engaged in group play in the school yard, during an afternoon recess period, but denied that the injury was of the gravity alleged or that it was proximately caused by any negligence on the part of the defendant, and then, as affirmative defenses, alleged: (1) that the plaintiff's injuries were caused, or materially contributed to, by his own negligence, and (2) that plaintiff's action was barred by the provisions of Rem. Rev. Stat., § 4706 [P.P.C. § 862-1].

Replying to the affirmative matter alleged in defendant's answer, plaintiff denied that he had been contributorily negligent and also denied that his action was barred by the statutory provision referred to above.

Upon these issues, framed by the pleadings, the cause was tried before a jury. At the close of plaintiff's case, the defendant, through its attorney, interposed a challenge to the sufficiency of plaintiff's evidence and moved for judgment of nonsuit, on the grounds: (a) that no evidence had been presented from which the jury could find that the defendant had been guilty of negligence with respect to plaintiff; (b) that even if there was such evidence of negligence, still the plaintiff had made no showing of proof from which the jury could properly find that defendant's negligence was the proximate cause of plaintiff's injury; and (c) that plaintiff's

evidence proved that his action was barred by the provisions of Rem. Rev. Stat., § 4706.

Following argument by counsel on the challenge and motion, the court indicated that it would reserve any ruling thereon until the defendant had submitted its evidence.

After both sides had rested, defendant renewed its challenge to the sufficiency of the evidence and its motion for nonsuit, and also moved that the court direct a verdict in favor of the defendant. The court granted the motion for directed verdict, and judgment was thereafter entered, dismissing the action and awarding to the defendant its costs and disbursements. Plaintiff appealed.

The principal question before us is whether, after careful consideration of the testimony adduced at the trial, the only conclusion that can fairly be drawn therefrom is that the record discloses no substantial evidence such as would require the submission of the case to the jury on the issues of negligence and proximate cause.

The facts, as the jury would have been entitled to find them, had the case been submitted to it at the conclusion of all the evidence, are as follows:

The appellant, Eugene Briscoe, is a minor. On November 16, 1944, the day of the injury concerning which this suit is being waged, he was eleven years of age and was a sixth grade student, in regular attendance at the public school of Ocosta. This school is a component part of the defendant school district No. 123 and is located in Grays Harbor county.

The physical facilities of the Ocosta school include a group of three buildings and a play shed, located upon its school grounds. To the left of the main, or high school, building, as one faces it, there is a playfield containing a baseball diamond and a football field. Adjacent to the right front half of the main building, and also to the right-hand side thereof, is a lawn approximately thirty feet wide and one-half block long in the front, and one hundred feet wide and one-half block long on the right, of the building.

The daily procedure in the school was to have a fifteen-minute recess period for all primary grades up to, and in-

cluding, the sixth, at ten o'clock in the morning and again at one forty-five in the afternoon. It was common practice, sanctioned by the school authorities, for the school children to utilize the lawn in front, and to the right, of the main building for a playground during these recess periods, this area being preferred by many of the pupils, because the grass in that locality was in better condition than the grass on the established playfield.

No regular physical education program for the primary grades from the first to the sixth, inclusive, was in force at the school. In lieu of such program, the pupils resorted to the playfield or the school lawn during the two fifteen-minute periods. The activities in which the school children engaged during these short recess periods were not scheduled or directed by the school authorities. On the contrary, it was the practice, with certain limitations, to allow the children to take part in any game which at the particular time or season of the year was popular with the age-group involved.

The game in popular favor among the boys of plaintiff's age-group on the day of his injury, and for some time prior thereto, was known as "keep-away," which was played with a football furnished by the school. The month during which the game was played being November, and it being a fact that the school authorities had, with respect to the recess periods, prohibited the playing of football, as that game is customarily played, the jury could well have inferred that the boys had selected the game of keep-away, which was not prohibited by the school, as a reasonable substitute for the traditional fall athletic sport.

The game of keep-away was played in the following manner: The boys would first choose sides, and the ball would thereupon be thrown into the air. The player who managed to gain possession of the ball would then either run with it or else throw or hand it to another player on his side, and this maneuver would be repeated by the receiving player. The purpose or object of the game was to maintain possession of the ball for as long a time as possible. The opposing

side would in the meantime bend its efforts toward getting possession of the ball and executing similar maneuvers, with the same object in view. The side or team which had possession of the ball at the end of the recess period was considered to be the winner of the game. Any additional rules that might be deemed necessary were agreed upon as the game progressed. In other words, the players "made up their rules as they went along."

Subsequent to the opening of the one forty-five afternoon recess period on the day on which appellant was injured, the following events occurred: A group of boys from the fifth and sixth grade classes went to the school office to get a football. They had agreed on the previous day as to the division of the players into two teams. Having procured the football from the office, they proceeded out of the building onto the school lawn, where the game was immediately begun in the manner above described.

After five or ten minutes of the recess period had elapsed, the appellant came into possession of the ball. Rather than immediately throwing or handing it to another member of his team, he began running with the ball and was closely pursued by several members of the opposing team. Among the pursuers was one Alfred Persson, who, upon overtaking appellant, grabbed him around the upper part of the waist and threw him to the ground in a tackle, landing on top of him. A number of players who were following close behind young Persson and appellant tumbled or piled on top of the latter two, either accidentally or purposely.

Upon striking the ground on his right side, appellant experienced a sharp pain in his right arm in the area of his elbow. After rising to his feet, appellant found that he was unable to throw the ball, and that his arm pained him severely. One of the players then helped appellant to the office of the school principal, Mr. Aase, who, upon ascertaining that the boy was seriously injured, inquired of him as to the identity of his family physician, then telephoned to the doctor for an appointment, and immediately thereafter drove to the latter's office, taking the appellant with him.

X rays revealed a fracture and a dislocation of the elbow, necessitating an operation.

From the beginning of the recess period until the time of appellant's injury, being a period of from five to ten minutes' duration, none of the teachers were present to supervise the play of the fifth and sixth grade pupils on the school lawn. A rule which had been promulgated by the supervisor of the defendant school district, to be enforced by the superintendent of the Ocosta school, was that each teacher should supervise the play of his or her class during the recess period.

The teacher who had been assigned to the duty of watching over the play of the group in question did not repair to the lawn at recess on this particular occasion, for the reason that she had been assigned the additional duty of conducting a so-called "make-up class" during the recess period. A make-up class was one composed of pupils who had been absent from school or who for some other reason were behind in their work. The purpose of holding such classes was to give those pupils such instruction as would enable them to catch up in their studies.

On those days during which a teacher was to conduct a make-up class during recess period, he or she would stay in the room with the pupils included in such class for a long enough period to get them started on their work, and then would proceed out to the playground and supervise the play of the remainder of his or her class for the balance of the recess period. This period of play supervision out-of-doors was usually quite brief, owing to the fact that whenever the teacher was absent from the school room an uproar would customarily break loose. It was not feasible to conduct these make-up classes in the late afternoon after school had been dismissed, for the reason that the pupils were transported to their homes in outlying areas by school busses, each bus following a different route, so that one bus could not be conveniently left for the purpose of accommodating those pupils who would be required to stay after school.

While playing the game of keep-away, it was a common occurrence for the players on one team to tackle a player on the other team and hurl him to the ground, if the latter did not throw the ball before he was caught. The school authorities had knowledge of this practice, and, during the time that a teacher was present to supervise the game, some attempt was made to discourage and prohibit unnecessary roughness in this regard. It was also a common occurrence for a player to get hurt severely enough for him to "cry" and discontinue the game until the pain had subsided.

All of these facts are amply supported by the evidence in the case, and the jury would have been justified in finding them to be as above recited, had the case been submitted to it.

The paramount legal question, therefore, on this phase of the appeal, is whether the trial court was correct in withdrawing the case from the jury's consideration, necessarily on the assumption that reasonable minds could not differ on the questions: (1) whether the respondent school district had been negligent as to the appellant, and (2) if it had been so negligent, whether its negligence was of such a nature as to constitute a proximate cause of his injury.

The general rule in this country is that a school district is not, in the absence of statute, subject to liability for injuries to pupils suffered in connection with their attendance at school, since such district, in maintaining schools, acts as an agent of the state, and performs a purely public or governmental duty, imposed upon it by law for the benefit of the public, and for the performance of which it receives no profit or advantage. Notes (1920), 9 A.L.R. 911 (1930), 66 A.L.R. 1281; *Read v. School Dist. No. 211*, 7 Wn. (2d) 502, 110 P. (2d) 179.

In the state of Washington, this general rule has been changed by virtue of Rem. Rev. Stat., §§ 950, 951 [P.P.C. §§ 88-1, -3], providing, *inter alia*, that a school district may be sued "for an injury to the rights of the plaintiff arising from some act or omission" of such public corporation. These two statutes have been amended, by necessary implication from

the enactment in 1917 of Rem. Rev. Stat., § 4706, the extent of which amendment will be discussed later herein.

 The general effect of Rem. Rev. Stat., §§ 950 and 951, in so far as we are here concerned, is to render a school district liable for the tortious acts or omissions of its officers, agents or servants, according to the normal rules of tort law. In *Redfield v. School Dist. No. 3*, 48 Wash. 85, 92 Pac. 770, this court said:

"With the inapplicable portions of the two sections omitted [Rem. Rev. Stat., §§ 950, 951], the law would read as follows: An action may be maintained against a school district for any injury to the rights of the plaintiff arising from some act or omission of such district. It seems to us that this statute is scarcely susceptible of construction. The complaint in this case shows that there was an injury to the right of the plaintiff, and that it arose from an act of negligence and an omission of duty on the part of the agents of the school district. It was the right of the plaintiff presumably to attend school in the building in which she was injured, and she had a right to the reasonable protection of her person while attending such school. This right it seems, under the allegations of the complaint, was violated, and she was thereby deprived of it. The school district had a duty to perform. This duty is imposed by statute. Among its prescribed duties are the duties to rent, repair, furnish, and insure schoolhouses, to employ and for sufficient cause to discharge teachers, to enforce rules and regulations prescribed by the superintendent of public instruction for the government of the schools and teachers, and in general to see that the school is conducted in a manner tending to carry out the object for which schoolhouses are· built and school districts organized."

By statute, teachers in public schools are given jurisdiction over the conduct of their pupils while going to and from school, while on the school grounds, and during intermission or recess periods. Rem. Rev. Stat., § 4854 [P.P.C. § 906-21]. The state board of education is charged with the power and duty of prescribing rules for the government and the best interests of the common schools. Rem. Rev. Stat. (Sup.), § 4529 [P.P.C. § 903-9]. School directors are charged by statute with the power and duty of enforcing the rules

and regulations prescribed by the superintendent of public instruction and the state board of education. Rem. Supp. 1943, § 4776 (2) [P.P.C. § 883-3].

These portions of our statutory law setting up a system of public schools are referred to for the purpose of demonstrating a fact of common knowledge, *viz.*, that when a pupil attends a public school, he or she is subject to the rules and discipline of the school, and the protective custody of the teachers is substituted for that of the parent.

As a correlative of this right on the part of a school district to enforce, as against the pupils, rules and regulations prescribed by the state board of education and the superintendent of public instruction, a duty is imposed by law on the school district to take certain precautions to protect the pupils in its custody from dangers reasonably to be anticipated, among which dangers, we think, should fairly be included the danger incurred from playing games inherently dangerous for the age-group involved, or likely to become dangerous if allowed to be engaged in without supervision. See 2 Restatement, Torts (1934), 867, § 320.

The extent of the duty thus imposed upon the respondent school district, in relation to its supervision of the pupils within its custody, is that it is required to exercise such care as an ordinarily reasonable and prudent person would exercise under the same or similar circumstances. *Rice v. School Dist. No. 302*, 140 Wash. 189, 248 Pac. 388; *Eckerson v. Ford's Prairie School Dist. No. 11*, 3 Wn. (2d) 475, 101 P. (2d) 345.

Applying these rules of law to the facts of the case at bar, we are of the opinion that there is ample evidence from which the jury could have found that the respondent school district was negligent in failing to provide supervision of the recess play of pupils, especially when it had knowledge of the rough-and-tumble manner in which they were playing keep-away.

Our conclusion is buttressed by the fact that the school district had prohibited the playing of football by these boys, presumably because the game was considered too rough and

dangerous, and yet the boys were allowed to engage in a game which, as played by them with a football, involved much of the body contact of the forbidden game, especially when played without any supervision.

It is contended, however, that, even conceding that there was sufficient evidence from which the jury could have found the respondent to have been guilty of negligence in failing to supervise the manner in which the game of keep-away was played, yet there was no evidence from which the jury could have found that this negligence was the proximate cause of the appellant's injuries. The case principally relied upon by respondent in support of this conclusion is *Read v. School Dist. No. 211*, 7 Wn. (2d) 502, 110 P. (2d) 179, cited above.

In that case, an action was brought against the school district by a high school boy for injuries sustained while engaged in a game of "touch football." The game was being played in the school gymnasium as part of the scheduled physical education program, and was supervised by an instructor. In reversing a judgment for the plaintiff, entered upon the verdict of a jury, we pointed out that even though it might have been negligent to conduct such a game inside a gymnasium, particularly one having defective floor boards, nevertheless there was no substantial showing that plaintiff's injury was caused by such negligence, for the injury incurred was due to the impact of someone's foot, knee, or elbow upon or against the plaintiff's back, and such an impact might have happened as easily outside a gymnasium, as within it.

We believe it is readily apparent that the *Read* case, *supra*, is not controlling of the case at bar. In the instant case, there was no supervision at all of the game, which was played in a manner similar to "tackle football" and engaged in by much younger boys. The jury had ample evidence before it from which it could have found that the failure to supervise the manner in which this game was played so as to make it a proper game for young boys, was the cause of appellant's injury.

Along this same line, the argument is made that rough play among young boys is inevitable, and that, even if a teacher had been present to supervise, she could not have been at the particular spot at the particular moment and thus been able to prevent the appellant from being tackled and piled upon by the other boys.

We concede that this argument may have some force when applied to an injury resulting from an isolated incident occurring on school premises (see dissenting opinion in *Gattavara v. Lundin*, 166 Wash. 548, 7 P. (2d) 958), yet where, as here, the injury results from participation in a group game which the jury could have found was dangerous when played without supervision, we cannot say that the question of proximate cause is anything other than a matter for the jury to decide.

The next question to be considered is the effect of the provisions of Rem. Rev. Stat., § 4706, upon appellant's cause of action. That statute reads as follows:

"No action shall be brought or maintained against any school district or its officers for any noncontractual acts or omission of such district, its agents, officers or employees, relating to any *park, playground, or field house, athletic apparatus or appliance, or manual training equipment,* whether situated in or about any schoolhouse or elsewhere, owned, operated or maintained by such school district." (Italics ours.)

This court has held that the words, "park, playground, or fieldhouse," as used in the above statute, are descriptive adjectives, designating the location of the "athletic apparatus or appliance, or manual training equipment," and that, therefore, a school district is exempted from liability only in the case of injury resulting from the negligence of its agents in relation to athletic apparatus or appliances or manual training equipment *located* on or in any park, playground or fieldhouse, or "in or about any schoolhouse or elsewhere, owned, operated or maintained by such school district." *Stovall v. Toppenish School Dist. No. 49,* 110 Wash. 97, 188 Pac. 12, 9 A.L.R. 908.

■ By this interpretation, our inquiry is narrowed down to the question of whether the football owned by the school district and furnished to the pupils in the instant case is to be considered "an athletic apparatus or appliance."

In making a determination of this question, we note, first, that in a broad, general sense, a football might be considered to be an athletic apparatus or appliance. When, however, the relation of the words used, as to each other, and the text of the statute as a whole are carefully studied, we think that the most reasonable interpretation of what the legislature intended by the words "athletic apparatus or appliance" is that it had reference to some sort of more or less permanently located equipment, such as swings, slides, traveling rings, teeter boards, chinning bars, etc., and not something as highly mobile as a football. The words "situated," "operated," and "maintained," as they are used in the statute in reference to "athletic apparatus or appliance," lend credence to this interpretation, for it is certainly incorrect to refer to a football as being "*situated* in or about any schoolhouse *or elsewhere, owned, operated or maintained* by such school district."

In two previous cases this court has used language indicating, by way of dictum, that our present interpretation of this statute is the one that the court, as then constituted, considered to be the correct one. In *Stovall v. Toppenish School Dist. No. 49, supra,* we said:

"It seems clear that the purpose of the legislature [in enacting Rem. Rev. Stat., § 4706] was to exonerate school districts from liability for an accident which occurs *upon* any athletic apparatus or appliance." (Italics ours.)

In *Read v. School Dist. No. 211, supra,* we said:

"The abrogation of the general rule [that counties and other public corporations shall not be liable in tort] is not complete, however, for the legislature has excluded from its operation *injuries produced* by the use of certain *equipment, maintained* by school districts. Rem. Rev. Stat., § 4706." (Italics ours.)

That our interpretation of Rem. Rev. Stat., § 4706, is the one which the legislature had in mind, finds support in the

fact that when the act was passed in 1917 there were pending before this court three cases involving suits against school districts to recover damages for injuries sustained by pupils by reason of the use of athletic apparatus or appliances, as we have limited the meaning of that term. Those cases are: *Bruenn v. North Yakima School Dist. No. 7*, 101 Wash. 374, 172 Pac. 569 (teeter board); *Kelley v. School Dist. No. 71*, 102 Wash. 343, 173 Pac. 333 (swing); *Holt v. School Dist. No. 71*, 102 Wash. 442, 173 Pac. 335 (slide).

The defense of contributory negligence was pleaded by the respondent, but was not argued to the trial court as one of the grounds for taking the case from the jury. In view of the age of the appellant at the time of the injury, and in view of the further fact that he was merely participating in a game which the other boys of his age were playing, however rough it may have been, the very most that can be said of a charge that the boy's actions constituted contributory negligence is that it is a jury question, under proper instructions to be given by the court. *Davis v. Wenatchee*, 86 Wash. 13, 149 Pac. 337; *Hutchins v. School Dist. No. 81*, 114 Wash. 548, 195 Pac. 1020; *Rice v. School Dist. No. 302*, *supra*; *Gattavara v. Lundin*, *supra*; *Eckerson v. Ford's Prairie School Dist. No. 11*, *supra*.

For the reasons hereinabove given, the judgment is reversed, and the cause will be remanded with instructions to the trial court to grant a new trial.

BEALS, SIMPSON, and HILL, JJ., concur.
MALLERY, J., dissents.

February 24, 1949. Petition for rehearing denied.