[No. 36451.   En Banc.   March 5, 1964.]

HOBERT R. BARNECUT, *Appellant,* v. SEATTLE SCHOOL DISTRICT No. 1, *Respondent.**

*Corbett, Siderius & Lonergan,* for appellant.

*Charles O. Carroll* and *James J. Caplinger,* for respondent.

*Reported in 389 P. (2d) 904.

FINLEY, J.—This is an action for damages for personal injuries. The claimant, Mr. Barnecut, was a spectator at a baseball game played on the Hiawatha playfield. It is significant that the Hiawatha playfield is a public playground owned by the City of Seattle. While he was sitting in the stand (near the third base area), Mr. Barnecut was struck on the left side of his face by a baseball thrown by a member of one of the high school teams. The individual who threw the ball was not participating in the game at the time, but was "warming up" near third base. Mr. Barnecut's upper full-plate denture was broken into three pieces; his mouth and face were cut through; and, subsequently, he allegedly suffered severe pain and swelling in his mouth, jaw and face. The lawsuit for the resultant injuries against the school district was based on the theory of negligence; namely, that the school district had not exercised proper care in supervising the activity or conduct of the students relative to the baseball game.

The trial court dismissed the complaint on the ground that the action was barred by the provisions of RCW 28.58-.030, which confer a *special immunity from tort liability* upon school districts as follows:

"No action shall be brought or maintained against any school district or its officers for any noncontractual acts or omission of such district, its agents, officers or employees, *relating to* any park, playground, or field house, *athletic apparatus or appliance,* or manual training equipment, whether situated in or about any schoolhouse or elsewhere, owned, operated or maintained by such school district." (Italics ours.)

The sole question before the court in this appeal is whether the factual pattern respecting plaintiff's claim for relief invokes the provisions of RCW 28.58.030, thereby conferring its statutory tort immunity upon the school district and barring plaintiff's claim for damages. Stated another way, the question is whether Mr. Barnecut's claim for his injuries is an action against the school district for a tort—that is, negligence "relating to any . . . athletic apparatus or appliance . . . owned, operated or main-

tained by such school district . . .";[1] or, perhaps more definitively, whether a baseball is an "athletic apparatus or appliance."

In attempting to resolve this latter question it seems desirable to consider the above-quoted statute, RCW 28.58.030, in the light of two decisions of this court: *Snowden v. Kittitas Cy. School Dist. No. 401* (1951), 38 Wn. (2d) 691, 231 P. (2d) 621; and *Briscoe v. School Dist. No. 123, Grays Harbor Cy.* (1949), 32 Wn. (2d) 353, 201 P. (2d) 697.

The appellant herein contends that the facts in *Briscoe* are sufficiently analogous to the instant case that *Briscoe* is controlling, and should have resulted in a denial of immunity for the School District in the instant case, and thus should have prevented the trial judge from dismissing the complaint with prejudice.

On the other hand, the respondent urges that *Snowden* broadly defines the words "athletic apparatus or appliance," and indirectly or by inference overrules *Briscoe* and supports the result reached by the trial court in the instant case.

We can agree with respondent that some of the language used in *Snowden* does appear to define the word *appliance* and the word *apparatus* somewhat broadly. But, essentially, the definition was for the purpose of the decision therein, and the language involved related to the particular facts of the *Snowden* case. In *Snowden* a small child, while walking across the school playfield, was injured when a baseball backstop collapsed. "Every allegation of negligence and all the testimony in support of such allegations directly or indirectly pertained, or had reference, to the con-

---

[1]In *Stovall v. Toppenish School Dist. No. 49* (1920), 110 Wash. 97, 188 Pac. 12, 9 A.L.R. 908, the court interpreted the words "any park, playground, or field house," appearing in RCW 28.58.030, as words of limitation applicable to "athletic apparatus" or "appliance"; *i.e.*, the words, "park, playground, or field house," are merely descriptive and limiting as to the places where the school district would not be liable for the accidents relating to athletic apparatus or appliance. See: *Sherwood v. Moxee School Dist. No. 90* (1961), 58 Wn. (2d) 351, 363 P. (2d) 138; and the dissent in *Snowden v. Kittitas Cy. School Dist. No· 401* (1951), 38 Wn. (2d) 691, 231 P. (2d) 621.

dition or use of the backstop." (*Snowden, supra,* p. 698.) In determining whether the backstop was an athletic apparatus or appliance within the contemplation of the special immunity statute, the court, in *Snowden,* cited and even quoted *Briscoe* with approval. This reliance upon *Briscoe,* coupled with the factual distinctions between *Snowden* and *Briscoe,* clearly leads us to reject the respondent's reasoning and the argument that *Snowden,* inferentially or *sub silentio,* overruled *Briscoe.*

Factually, in *Briscoe* a school child was injured during a school recess period while playing "keep-away" with a football supplied by the school. The question of whether a football was an "athletic apparatus or appliance" within the contemplation of the special immunity statute was resolved by the court as follows:

"In making a determination of this question, we note, first, that in a broad, general sense, a football might be considered to be an athletic apparatus or appliance. When, however, the relation of the words used, as to each other, and the text of the statute as a whole are carefully studied, we think that the most reasonable interpretation of what the legislature intended by the words 'athletic apparatus or appliance' is that it had reference to some sort of more or less permanently located equipment, such as swings, slides, traveling rings, teeter boards, chinning bars, etc., and not something as highly mobile as a football. The words 'situated,' 'operated,' and 'maintained,' as they are used in the statute in reference to 'athletic apparatus or appliance,' lend credence to this interpretation, for it is certainly incorrect to refer to a football as being *'situated* in or about any schoolhouse *or elsewhere, owned, operated or maintained* by such school district.' "

■ The key significance of the above-quoted statement from *Briscoe* is that in defining the phrase, "athletic apparatus or appliance," the court emphasized that those words connoted more or less permanently located equipment and not something as highly mobile as a football. Although a baseball differs somewhat from a football in terms of size and other physical attributes, it would seem incongruous to classify it differently in relation to the

special immunity statute. Consistent with the reasoning in *Briscoe,* a baseball certainly can be said to be highly mobile, as opposed to "some sort of more or less permanently located equipment, such as swings, slides, traveling rings, teeter boards," etc. We are not persuaded that the decision has been overruled, directly or impliedly, or that it should be overruled explicitly. *Briscoe* thus retains its pristine precedental import and is controlling. It should have dictated an opposite result in the instant case. Accordingly, the judgment of the trial court is reversed, and the case is remanded for further proceedings, with costs on this appeal awarded to the appellant.

HILL, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

OTT, C. J. (dissenting)—RCW 28.58.030 provides:

"No action shall be brought or maintained against any school district . . . for any noncontractual *acts* or *omission* of such district . . . *relating to any . . . playground, . . . athletic apparatus or appliance . . .* owned, operated or maintained by such school district." (Italics mine.)

This court is asked for the first time to interpret this immunity statute as it applies to a spectator who sat in the bleachers on a public playground owned by the City of Seattle, but at the time being used as a school playground, and who was injured when struck in the face by a baseball thrown by one of the school players.

The appellant alleged:

"That the sole proximate cause of plaintiff's [appellant's] injuries was the negligence upon the part of the defendant as follows:

"(1) In failing to instruct the students of said district participating in the baseball game to exercise reasonable care in throwing baseballs so as to avoid injury to spectators;

"(2) In failing to supervise the location of players at the time of the accident in question;

"(3) In failing to instruct personnel of the district concerning supervision of the students engaged in the games; and

"(4) In failing to promulgate any rules and regulations relative to conduct of the baseball game in regard to safety of spectators."

These alleged omissions relate to the school district's ownership, maintenance, and *operation* of a school playground.

In *Snowden v. Kittitas Cy. School Dist. No. 401*, 38 Wn. (2d) 691, 698, 231 P. (2d) 621 (1951), this court, in interpreting the immunity statute, said:

"The statute exonerates school districts with respect to
" ' . . . *any* noncontractual acts or omission of such district, its agents, officers or employees, *relating to* any park, playground, or field house, athletic apparatus or appliance . . . ' (Italics ours.)

" 'Relating to' means in respect to; in reference to; in regard to. *Commonwealth v. Mathues*, 210 Pa. 372, 59 Atl. 961; *In re Water Supply in City of New York*, 109 N. Y. S. 652; Webster's New International Dictionary (2d ed.) 'relate.' "

The trial judge, applying the rule in the *Snowden* case to the admitted facts of this case, properly held that the school district was immune from liability, by virtue of the statute, for its omission relating to a playground.

The majority reverse the trial court by applying the rule announced in *Briscoe v. School Dist. No. 123, Grays Harbor Cy.*, 32 Wn. (2d) 353, 201 P. (2d) 697 (1949), a departmental decision. In the *Briscoe* case, a child was injured by a schoolmate while playing "keep-away" with a football. The court held that the school district owed a duty, irrespective of the statute, to supervise children during school hours, both at play and at study; that "athletic apparatus or appliance" must be *permanently installed* to come within the purview of the statute, and that a football was too mobile to be within the contemplation of the act.

The *Briscoe* rule was subsequently considered in the en banc decision of this court in *Snowden v. Kittitas Cy. School Dist. No. 401, supra*. In the *Snowden* case, a movable baseball backstop fell over on Donald Snowden as he walked past it on the playground. The *Briscoe* rule was

at least modified, if not abandoned, by the *Snowden* decision. In the *Snowden* case, the court redefined the meaning of the terms "apparatus" and "appliance," as used in the immunity statute. The court said (p. 697):

"The word 'apparatus' means a collection or set of materials, implements, or utensils, for a given work, experimental or operative. [citing cases and authority]

"The word 'appliance' is very broad and includes anything applied or used as a means to an end. [citing cases and authority]"

Applying these definitions to the facts, the court held that a mobile backstop was an appliance, within the meaning of the statute, and directed that the terms "apparatus" and "appliance" be given a "broad" and " 'all-embracing' " definition, rather than one that was limited and restricted. In this regard, the court quoted with approval from *Juntila v. Everett School Dist. No. 24*, 178 Wash. 637, 35 P. (2d) 78 (1934), as follows (p. 694):

" 'Athletic apparatus, appliances and manual training equipment are all things pertaining to the activities of those engaged in physical training or exercise, . . .' "

The ball, the bats, the gloves, the catcher's mask, shin guards, and the body protector are parts of the "set of materials . . . for a given work," used in the game of baseball. They are " 'things pertaining to the activities of those engaged in physical training or exercise.' " The ball is the part "used as a means to an end" for, without it, there can be no game.

Clearly, under authority of the *Snowden* rule and the cases cited therein, a baseball is an athletic appliance and within the scope of the immunity statute, when used on a school playground by those engaged in the activity of physical training.

The rationale of the *Snowden* case was reannounced by this court in *Sherwood v. Moxee School Dist. No. 90*, 58 Wn. (2d) 351, 359, 363 P. (2d) 138 (1961), when the late Judge Foster, speaking for the court, held:

" . . . By statute, the liability of the school district for negligence is the same as the liability of any person or

corporation *except that a school district has absolute immunity for accidents resulting from 'any athletic apparatus or appliance* or manual training equipment.' . . ." (Italics mine.)

I find nothing in the immunity statute that indicates a legislative intent that the words and phrases "relating to," "playground," "athletic apparatus or appliance," "owned, operated, or maintained," should be given a limited or restricted meaning. The *Snowden* case defines these terms as they are usually and ordinarily understood, and as they are defined by other jurisdictions and in the dictionary.

A spectator watching a free baseball game on a school playground has no cause of action against the school district, when he is hit by a baseball while sitting in the bleachers, because the district, by statute, owes such a person no duty of care. This is so because the legislature, in the exercise of its discretion, has said:

"*No action shall be brought or maintained against any school district* . . . *for any noncontractual acts or omission* . . . *relating to any* . . . *playground,* . . . *athletic apparatus or appliance* . . ." (Italics mine.) RCW 28.58.030

A baseball is an appliance because this court, sitting en banc, said in the *Snowden* case that "the word 'appliance' is very broad and includes anything applied or used as a means to an end." More than 12 years later, a majority of this court now reverse the *Snowden* case and say that a baseball is not an appliance "used as a means to an end" in the game of baseball. Should this interpretation gain nationwide acceptance, we could be watching the World Series in pantomime.

In my opinion, the judgment of the trial court should be affirmed.

DONWORTH and WEAVER, JJ., concur with OTT, C. J.