# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BONNIE I. MEYERS, as personal representative of the estate of GABRIEL LEWIS ANDERSON, a deceased minor, age 15, and on behalf of the beneficiaries of the estate; and BRANDI K. SESTROM and JOSHUA ANDERSON, individually,<br><br>Appellants,<br><br>v.<br><br>FERNDALE SCHOOL DISTRICT, a political subdivision of the State of Washington,<br><br>Respondent,<br><br>and<br><br>WILLIAM KLEIN and JANE DOE KLEIN and the marital community comprised thereof,<br><br>Defendants. | DIVISION ONE<br><br>No. 79655-1-I<br><br>PUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: February 10, 2020 |

DWYER, J. — Following the death of high school student Gabriel Anderson, Bonnie Meyers, as personal representative of Anderson's estate, filed suit against the Ferndale School District (Ferndale) and William Klein. Meyers asserted that Anderson's death was the result of Ferndale negligently removing Anderson from the safety of his high school campus. Ferndale's actions, Meyers asserted, exposed Anderson to the negligent driving of Klein, who fell asleep

behind the wheel and drove his motor vehicle up onto a sidewalk, killing Anderson.

The trial court granted Ferndale's subsequent motion for summary judgment and dismissed Meyers' claims against Ferndale, concluding—as a matter of law—that the collision was not reasonably foreseeable and that Ferndale therefore had no duty to take steps to prevent its occurrence. In its order, the trial court improperly based its determination of foreseeability on the specific harm that occurred, rather than on the general field of danger created when Ferndale staff took Anderson off campus for a walk along a public roadway. Because evidence in the record establishes a genuine issue of material fact regarding whether it was foreseeable that Anderson could be struck by a motor vehicle while walking along a public roadway, we reverse.

I

Gabriel Anderson was a student at the Ferndale School District's Windward High School during the 2014-2015 school year. At Windward High School, he was in teacher Evan Ritchie's physical education class. On June 10, 2015, Ritchie decided to take Anderson's class for a walk off the school's campus grounds.

Windward High School was ostensibly a modified closed campus school and Ferndale had specific policies in place during the 2014-2015 school year regarding taking students off campus on field trips or excursions. Ferndale required teachers to obtain the permission of a student's parent or guardian before taking them off campus for a field trip or excursion. All parties agree that

Ritchie did not follow these policies prior to taking Anderson's class off campus.[1] Instead, Ritchie asserted that only minutes prior to the outing he sought and obtained the approval of Windward High School's then principal, Tim Kiegley, to take his class for a walk off campus.[2]

Without securing any additional adult supervision, Ritchie then proceeded to take his students off campus, walking west on the sidewalk along the north side of West Smith Road past the school safety zone to a section of the road where motor vehicles were permitted to travel at speeds of up to 40 miles per hour. At times during the walk, some students were up to 200 meters away from Ritchie. To return to the school, the students were explicitly granted permission to cross West Smith Road to reach the south side of the road at locations other than at designated crosswalks, and they did so.

To return to the school, the students crossed the street and walked along the sidewalk on the south side of West Smith Road, with their backs to oncoming traffic. At a point outside of the school safety speed zone, just before the intersection of Graveline Road and West Smith Road, Anderson and several other students were struck by William Klein's sport utility vehicle. Klein had fallen asleep at the wheel and driven off the road and onto the sidewalk. Anderson and

---

[1] However, the parties dispute whether the policy was applicable to Ritchie's decision to take his class out for a walk near the school. Ferndale and Ferndale's witnesses assert that the policy did not apply to the outing Ritchie took his class on because it was not a field trip or an excursion.

[2] The record contains inconsistent statements from Kiegley regarding how much information Ritchie provided to him concerning where, exactly, Ritchie planned to take his class. Even in the portions of the record wherein Kiegley asserted that he knew about Ritchie's planned walking path prior to the class's departure, Kiegley did not properly identify the location of crosswalks along West Smith Road, asserting that there is a crosswalk on West Smith Road at the west end of the students' walking path when there is none.

one other student were killed. Two other students were grievously injured.

Meyers subsequently sued both Klein and Ferndale, alleging that they had acted negligently and that their negligence had resulted in Anderson's untimely death. Ferndale then moved for summary judgment dismissal of Meyers' claims against it on the grounds that (1) the collision that killed Anderson was not foreseeable—thus Ferndale had no duty to take steps to prevent it—and (2) even if Ferndale breached a duty, such breach was not the proximate cause of Anderson's death. The trial court agreed with Ferndale that the collision was not foreseeable and issued an order granting summary judgment and dismissing Meyers' claims against Ferndale on that basis.

Meyers appeals.

## II

Meyers contends that the trial court erred by concluding that the collision resulting in Anderson's death was not foreseeable. This is so, Meyers asserts, because the trial court improperly based its determination of foreseeability on the specific harm that occurred, rather than on the general field of danger created when Ritchie took Anderson off campus for a walk along a public roadway. In response, Ferndale asserts that the trial court's ruling did not actually dismiss Meyers' claims against it on the ground that injury to Anderson was unforeseeable but, rather, because Ferndale's actions were neither the cause in fact nor the legal cause of Anderson's death. Meyers has the better argument.

A

We review de novo a trial court's order granting summary judgment. Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 767, 436 P.3d 397, review denied, 193 Wn.2d 1023 (2019). We will affirm such an order only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Woods View II, LLC v. Kitsap County, 188 Wn. App. 1, 18, 352 P.3d 807 (2015). On review, we must "conduct the same inquiry as the trial court and view all facts and their reasonable inferences in the light most favorable to the nonmoving party." Greensun Grp., LLC, 7 Wn. App. 2d at 767 (citing Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276 (2006)).

To prevail in this negligence suit, Meyers must show "'(1) the existence of a duty to [Anderson], (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" N.L. v. Bethel Sch. Dist., 186 Wn.2d 422, 429, 378 P.3d 162 (2016) (quoting Crowe v. Gaston, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). In this appeal, the parties contest only the issues of duty and proximate cause.

B

Meyers primarily contends that the trial court erred by concluding that Ferndale had no duty to protect Anderson against the collision that resulted in his death. This is so, Meyers asserts, because the court applied the wrong legal standard of foreseeability by requiring the specific collision to be foreseeable in order for Ferndale to have a duty to protect Anderson. According to Meyers,

5

Ferndale had a duty so long as the specific injury-causing event was within the general field of danger created when Ritchie took Anderson off campus to walk along a sidewalk next to a public roadway.[3] We agree.

"Whether a duty exists is a question of law for the court." N.L, 186 Wn.2d at 429 (citing Aba Sheikh v. Choe, 156 Wn.2d 441, 448, 128 P.3d 574 (2006)). "School districts have the duty 'to exercise such care as an ordinarily responsible and prudent person would exercise under the same or similar circumstances.'" N.L., 186 Wn.2d at 430 (quoting Briscoe v. Sch. Dist. No. 123, 32 Wn.2d 353, 362, 201 P.2d 697 (1949)). While common law generally imposes no duty to prevent a third person from causing physical injury to another, such a duty arises when "'a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct.'" Niece v. Elmview Grp. Home, 131 Wn.2d 39, 43, 929 P.2d 420 (1997) (internal quotation marks omitted) (quoting Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 227, 802 P.2d 1360 (1991)). Pertinently, "[s]chool districts have a custodial relationship with their students—'[i]t is not a voluntary relationship.' As a result, the school district must 'take certain precautions to protect the pupils in its custody from dangers reasonably to be anticipated.'" Hendrickson v. Moses

---

[3] In response, Ferndale asserts that the trial court did not actually base its ruling on foreseeability in the context of duty but, rather, on legal causation. Ferndale is wrong. The trial court was very clear in its memorandum decision: "The Defendant school district here argues that the accident was not foreseeable, and further argues that the Plaintiffs cannot establish legal cause or proximate cause. The Defendants[ ] prevail on the argument of foreseeability." That the trial court did not base its ruling on causation is made even clearer by the fact that it declined to sign an order proposed by Ferndale that explicitly stated that its actions were not the legal cause of the harm to Anderson. Instead, the order signed by the trial court is silent as to legal causation, referring only to its memorandum letter decision discussing foreseeability in the context of Ferndale's duty.

Lake Sch. Dist., 192 Wn.2d 269, 276, 428 P.3d 1197 (2018) (second alteration in original) (citation omitted) (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wn.2d 316, 319-20, 255 P.2d 360 (1953)). "As long as the harm is 'reasonably foreseeable,' a school district may be liable if it failed to take reasonable steps to prevent that harm." Hendrickson, 192 Wn.2d at 276 (citing McLeod, 42 Wn.2d at 320).

When foreseeability is a question of whether a duty exists, it is a question of law, but when foreseeability is a question of whether the harm is within the scope of the duty owed, it is a question of fact for the jury. McKown v. Simon Prop. Grp., Inc., 182 Wn.2d 752, 764, 344 P.3d 661 (2015). Foreseeability is not measured against the specific sequence of events leading to harm or against the exact harm suffered. "'[T]he question is whether the actual harm fell within a general field of danger which should have been anticipated.'" Hendrickson, 192 Wn.2d at 276 (alteration in original) (quoting McLeod, 42 Wn.2d at 321).

For example, in McLeod, our Supreme Court reversed the dismissal of negligence claims against a school district in a case in which a 12-year-old student was forcibly raped by fellow students during recess. 42 Wn.2d at 317. The court refused to base its determination of foreseeability on whether it was foreseeable that students would forcibly rape another student if left unsupervised near an unoccupied dark room. McLeod, 42 Wn.2d at 321. Instead, the court considered whether the harm was in the general field of danger, which it considered to be "that the darkened room under the bleachers might be utilized during periods of unsupervised play for acts of indecency between school boys

7

and girls." McLeod, 42 Wn.2d at 322.

The trial court herein misapplied this foreseeability standard by focusing on the specifics of the collision in this case, rather than on the general field of danger attendant to removing students from campus to walk along a sidewalk adjoining a public roadway. In its memorandum decision, the trial court concluded that Meyers had failed "to establish that this tragic accident was foreseeable on the part of the Defendant school district." The trial court stated "[t]hat a driver would fall asleep in the middle of the day on a bright, sunny afternoon, leave the roadway, and hit the students is not foreseeable for the school district." It further emphasized that Klein "did not see the students before he hit them, as all parties agree that he had no recollection of the accident and the accident itself resulted from him falling asleep at the wheel. There was simply no time for teacher Ritchie to react, nor any time for the students to either. Such an accident is not foreseeable." Plainly, the trial court incorrectly focused its foreseeability analysis on the specific injury-causing event herein.

Focusing on the more general field of danger, the record is replete with evidence indicating that, at the very least, there is a question of fact for the jury regarding whether the harm to Anderson was foreseeable. First, even before considering the record, it is common knowledge, and has been noted in case law for decades, that cars do not always stay in their lanes; accidents happen. See, e.g., Berglund v. Spokane County, 4 Wn.2d 309, 320, 103 P.2d 355 (1940) ("[I]t is a well known fact that automobiles do, at times, for one reason or another, forsake their lane of travel . . . . The records of every court abound with such

8

instances. It cannot be held, as a matter of law, that such occurrences are so highly extraordinary or improbable as to be wholly beyond the range of expectability."). Second, Meyers presented expert opinion evidence and statistics from the National Highway Traffic Safety Administration confirming that car accidents involving pedestrians are a common occurrence in the United States. Third, deposition testimony from Ferndale officials acknowledged that it was foreseeable that removing students from the school campus could result in harm to the students. Thus, the trial court erred by granting summary judgment on the ground that the harm to Anderson was not foreseeable as a matter of law; there was, at the very least, a question of fact about whether it was reasonably foreseeable that having Anderson walk along a public roadway off the school campus could result in him being injured in a collision involving a motor vehicle.

III

Ferndale contends, in the alternative, that we should affirm the summary judgment order on the ground that, even if Ferndale had a duty to Anderson and breached that duty, there is no genuine issue of material fact regarding whether Ferndale's breach of its duty was the proximate cause of the harm to Anderson.

Appellate courts "may affirm the trial court on 'any theory established in the pleadings and supported by proof,' even where the trial court did not rely on the theory." Potter v. Wash. State Patrol, 165 Wn.2d 67, 78, 196 P.3d 691 (2008) (quoting Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 698, 952 P.2d 590 (1998)). Herein, the parties briefed and argued the issue of proximate cause before the trial court and have briefed the issue of proximate

9

cause on appeal. The trial court acknowledged that Ferndale presented argument regarding the issue of proximate cause in its order, even though it declined to rule in Ferndale's favor on that issue. We exercise our discretion to consider Ferndale's contention that we should affirm on the alternative ground that, as a matter of law, Ferndale's breach was not the proximate cause of Anderson's death.

Proximate cause consists of two parts—cause in fact and legal cause. Hartley v. State, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). "Establishing cause in fact involves a determination of what actually occurred and is generally left to the jury." Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 610, 257 P.3d 532 (2011) (quoting Schooley v. Pinch's Deli Market, Inc., 134 Wn.2d 468, 478, 951 P.2d 749 (1998)). "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." Schooley, 134 Wn.2d at 478-49.

A

Ferndale asserts that there is no genuine dispute of material fact regarding whether it was a cause in fact of Anderson's death. We disagree.

"Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." Hartley, 103 Wn.2d at 778 (citing King v. City of Seattle, 84 Wn.2d 239, 249, 525 P.2d 228 (1974), rejected on other grounds by, City of Seattle v. Blume, 134 Wn.2d 243, 947 P.2d 223 (1997)). It is possible for there to be more than one "but for" cause of a harm, and so causation is frequently considered as a chain of events without which a harm

10

would not have occurred. See, e.g., Dep't of Labor & Indus. v. Shirley, 171 Wn. App. 870, 884, 288 P.3d 390 (2012). Independent actors may also breach separate duties which in concurrence produce an injury. Stephens v. Omni Ins. Co., 138 Wn. App. 151, 182-83, 159 P.3d 10 (2007), aff'd, 166 Wn.2d 27, 204 P.3d 885 (2009).

The record herein contains sufficient evidence to establish a genuine dispute of material fact regarding whether Ferndale's breach was a "but for" cause of Anderson's death. Meyers' and Ferndale's expert witnesses disagreed about whether Ferndale's field trip and excursion policy covered Ritchie's class outing, and whether compliance with that policy would have prevented Anderson's death. That dispute alone would be sufficient to overcome summary judgment. See C.L. v. Dep't of Soc. & Health Servs., 200 Wn. App. 189, 200, 402 P.3d 346 (2017) ("In general, when experts offer competing, apparently competent evidence, summary judgment is inappropriate."), review denied, 192 Wn.2d 1023 (2019).

But there is more. The record also reveals disputes regarding the safety of the walking path Ritchie selected—a path that took students outside of the school safety speed zone to walk alongside a high speed roadway and required crossing the road in an area devoid of designated crosswalks—and the alleged failure to provide sufficient safeguards and to follow pedestrian safety rules during the walk—such as by having only one adult present to supervise the class, allowing students to walk at distances up to 200 meters from Ritchie, and having students walk along sidewalks with their backs to oncoming traffic.

Meyers provided expert witness testimony opining that without the improper walking path and the failure to follow proper pedestrian safety procedures, Anderson would not have been struck by Klein's vehicle. It is properly for a jury to decide whether Ferndale's breach of its duty of care was a cause in fact of Anderson's injuries and subsequent death.

B

Ferndale next asserts that we should affirm on the ground that its breach of duty cannot be considered the legal cause of Anderson's death. This is so, Ferndale asserts, because (1) the issue of legal causation is analyzed independently of the field of danger analysis utilized to determine whether a school district has a duty of care and (2) mixed considerations of logic and policy support limiting Ferndale's liability in this case because the connection between the ultimate injury and Ferndale's acts is too remote to impose liability. Ferndale is wrong.

"Unlike factual causation, which is based on a physical connection between an act and an injury, legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." Schooley, 134 Wn.2d at 478. "In deciding whether a defendant's breach of duty is too remote or insubstantial to trigger liability as a matter of legal cause, we evaluate 'mixed considerations of logic, common sense, justice, policy, and precedent.'" Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (internal quotation marks omitted) (quoting Hartley, 103 Wn.2d at 779). While duty and legal cause are not identical issues, Washington courts "have long recognized the

interrelationship between questions of duty and legal cause." Lowman, 178 Wn.2d at 169 (citing Hartley, 103 Wn.2d at 779-81).

For example, in Lowman, our Supreme Court noted that duty and legal cause both "concern the policy issue of how far the legal consequences of the defendant's negligence should extend." 178 Wn.2d at 169 (citing Hartley, 103 Wn.2d at 779-80). The court concluded that "[i]n the context of liability for negligent roadway design or maintenance, any consideration of the legal cause question should therefore begin with a review of the duty question" in that context. Lowman, 178 Wn.2d at 169.

The Lowman court then proceeded to discuss the duty question by relying on its seminal case concerning duty in the context of a municipality's responsibility to protect the users of public roads, Keller v. City of Spokane. 146 Wn.2d 237, 44 P.3d 845 (2002). It noted that "Keller took a broader view of a municipality's or utility's responsibility to protect the users of public roads. Analyzing the question of duty, the court unequivocally rejected limitations on liability for roadway design or maintenance premised on the negligence or recklessness of a driver." Lowman, 178 Wn.2d at 170-71 (citing Keller, 146 Wn.2d at 249).

After setting forth this analysis, our Supreme Court rejected the argument raised by the defendant utilities in Lowman that it applied solely to the question of duty, and not to the question of legal cause. 178 Wn.2d at 171. The court concluded that "[m]any of the same concerns that guided the duty analysis in Keller must guide the analysis of legal causation in this case." Lowman, 178

Wn.2d at 171. The court further noted that "policy considerations that support imposition of a duty will often compel the recognition of legal causation, so long as cause in fact is established under the relevant facts. Such is the case here." Lowman, 178 Wn.2d at 171 (citation omitted) (citing Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460, 476, 656 P.2d 483 (1983)). It reasoned that "there is no rationale to negate the sound policy preference expressed in Keller for holding municipalities and companies charged with maintaining utilities accountable for doing so in a reasonable fashion, particularly with regard to safe travel on public roads." Lowman, 178 Wn.2d at 172.

Ferndale asserts that we must determine whether its actions are too remote from Anderson's death to impose liability without utilizing the general field of danger foreseeability standard applicable in the context of Ferndale's duty. Transferred to the context of a school district's liability, this is exactly the argument rejected by our Supreme Court in Lowman. Here, as in Lowman, "any consideration of the legal cause question should . . . begin with a review of the duty question." 178 Wn.2d at 169.

Furthermore, Ferndale does not cite to a single case in the school district liability context in which a court ruled that principles of legal causation barred liability.[4] Indeed, prior cases discussing legal causation in the school district context have reached the opposite conclusion. See, e.g., N.L., 186 Wn.2d at 438

---

[4] Instead, Ferndale cites to cases in other contexts that concluded that principles of legal causation barred liability, including Cunningham v. State, 61 Wn. App. 562, 811 P.2d 225 (1991), and Medrano v. Schwendeman, 66 Wn. App. 607, 836 P.2d 833 (1992). However, these specific cases, and their reasoning regarding the application of legal cause principles, were explicitly rejected in Lowman, 178 Wn.2d at 170-71.

("[W]e cannot say as a matter of law that a district's failure to take any action in response to being notified that Clark was a registered sex offender was not a legal cause of N.L.'s injury. Sexual assault by a registered sex offender is foreseeable, as is the fact that a much younger student can be convinced to leave campus by an older one."); McLeod, 42 Wn.2d at 324 ("We have held that it is for the jury to decide whether the general field of danger should have been anticipated by the school district. If the jury finds respondent negligent in not having anticipated and guarded against this danger, then it is not for the court to say that such negligence could not be a proximate cause of a harm falling within that very field of danger.").

Ferndale's urging that we uncouple legal causation analysis from duty analysis runs counter to the Supreme Court's teachings in Lowman. Based on established law, Ferndale fails to establish that its defalcations were not the legal cause of Anderson's injuries and subsequent death.

Reversed.

_____
Dwyer, J.

WE CONCUR:

_____          _____
Smith, J.                          Andrus, J.