# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ALLEN G. QUYNN and JENNIFER A. QUYNN, husband and wife, individually, and as parents and guardians on behalf of LILLIAN J. QUYNN, their minor child,

Appellant,

v.

BELLEVUE SCHOOL DISTRICT,

Respondent.

DIVISION ONE

No. 73825-9-I

PUBLISHED OPINION

FILED: August 29, 2016

DWYER, J. — Lillian Quynn's parents, individually and as her guardians, sued the Bellevue School District, alleging that it was negligent in failing to protect their daughter from harassment, intimidation, and bullying on the school bus. A jury returned a verdict in favor of the school district, finding that the Quynns failed to prove that the district acted negligently. On appeal, the Quynns first contend that a common carrier's duty of care applied to the district's relationship with its student while on the bus. In the context of the claim herein, the Quynns are wrong. However, the Quynns are correct in their next contention, that the instructions given to the jury did not properly articulate the legal obligations owed by the district to its student and required proof of unnecessary

facts in order for the Quynns to prevail. Accordingly, we reverse.

I

Allen and Jennifer Quynn sued the Bellevue School District, claiming that the district had been negligent in failing to protect their daughter Lillian from harassment, intimidation, and bullying that she suffered while riding the school bus during her eighth grade year of middle school.[1]

According to Lillian, several of her male classmates routinely harassed, intimidated, or bullied other students on the school bus. In December 2010, Lillian witnessed an especially serious incident in which a female classmate was targeted by this group and reported it to a school administrator. Thereafter, Lillian asserted, she was increasingly the focus of the boys' aggression. Lillian recounted being called insulting names, having paper "hornets" thrown at her, which caused welts to form on her skin, and, on one occasion, having her buttocks groped. As a result of being bullied, the Quynns asserted, Lillian experienced a number of serious physical and emotional afflictions.

It is undisputed that Lillian never reported to anyone any of the incidents of harassment, intimidation, or bullying that she personally experienced. Her claim that school personnel should have foreseen and protected her from the harm that she experienced was based on school administrators' alleged awareness of other, similar incidents of harassment, intimidation, and bullying, particularly the December 2010 incident reported by Lillian.

---

[1] While the Quynns' claims were initially broader, pretrial rulings limited the scope of the trial to whether the school district was negligent in not preventing the alleged physical assault and harassment of Lillian "on the bus in her 8th grade year."

The Quynns laid out their theory of the case during closing argument. They claimed that, after Lillian reported the December 2010 incident, the school "put its head in the sand" and Lillian suffered from retaliatory harassment as a result. The Quynns argued that district personnel knew or should have known that the alleged harassment, intimidation, and bullying on the school bus went beyond the particular students involved in the December 2010 incident. While acknowledging that the school spent "a ton of time" responding to that incident, they argued that it should have done more. Specifically, the Quynns argued that the school should have followed up with Lillian and should have created a "safety plan" for her to protect against retaliation. They argued that these failures to act permitted her to be bullied, which, in turn, caused her to suffer emotional and physical injury.

Ultimately, the jury determined that the Quynns did not prove that the district acted negligently.

## II

The Quynns' appeal centers on their contention that the jury was misinstructed by the trial court as to the legal obligations of the school district to Lillian and other students. The Quynns advance three major challenges to the trial court's instructions. They are wrong as to the first challenge but correct as to the other two.

The Quynns' contentions primarily concern Instruction 15, which provided:

> A school district has a duty to take ordinary care to prevent harassment, intimidation and bullying of one student by another if it knows or has reason to know that a student is the subject of harassment, intimidation or bullying by another student.

-3-

Harassment, intimidation and bullying means any intentionally written or verbal or physical act when the intentional electronic, written, verbal, or physical act:

a) Physically harms a student or damages the student's property; or
b) Has the effect of substantially interfering with a student's education; or
c) Is so severe, persistent, or pervasive that it creates an intimidating or threatening educational environment; or
d) Has the effect of substantially disrupting the orderly operation of the school.

The Quynns assert that the foregoing instruction was incorrect for three reasons: first, because the jury was not instructed that the district owed Lillian the highest duty of care, one applicable to common carriers; second, because the instruction included a definition of harassment, intimidation, and bullying that wrongly and unfairly limited the reach of their negligence claim; and, third, because the instruction improperly articulated the duty and responsibility owed to Lillian by the district.

## A

The Quynns contend that Instruction 15 was incorrect with regard to the level of duty a school district owes to its students.[2] This is so, they assert, because a school district, in all respects, owes its students the highest duty of care, not simply a duty of ordinary care, when the students are passengers on a school bus. We disagree.

---

[2] We review legal errors in jury instructions de novo. Fergen v. Sestero, 182 Wn.2d 794, 803, 346 P.3d 708 (2015). If the instruction misstates the law, prejudice is presumed. Fergen, 182 Wn.2d at 803.

As a general rule, "there is . . . no duty to prevent a third party from causing physical injury to another, unless 'a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct.'" Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 227, 802 P.2d 1360 (1991) (quoting Petersen v. State, 100 Wn.2d 421, 426, 671 P.2d 230 (1983)). Pursuant to well-established case law, the special relationship between school districts and their pupils gives rise to such a duty to protect.

The leading case in this regard is McLeod v. Grant County School District No. 128, 42 Wn.2d 316, 255 P.2d 360 (1953). Therein, the plaintiff-student was raped by older students during a school recess in a dark, unlocked room beneath school bleachers. McLeod, 42 Wn.2d at 318. The Supreme Court held that the victim's suit against the school district could proceed even though school officials were unaware of the "vicious propensities" of the older students. McLeod, 42 Wn.2d at 321. The court reasoned that, because a child is compelled to attend school and has an involuntary relationship with the school district, the district has a duty "to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in its custody from such dangers." McLeod, 42 Wn.2d at 320; accord Christensen v. Royal Sch. Dist. No. 160, 156 Wn.2d 62, 67, 124 P.3d 283 (2005) (referring to "the well-established law in Washington that a school district has an enhanced and solemn duty to protect minor students in its care"); J.N. v. Bellingham Sch. Dist. No. 501, 74 Wn. App. 49, 58-59, 871 P.2d 1106 (1994) (recognizing a school's duty to supervise and protect students where an older student repeatedly sexually assaulted a younger student in a

restroom located in the school's cafeteria). "The duty imposed under these circumstances is one of reasonable care: as it supervises the pupils within its custody, the district is required to exercise such care as a reasonably prudent person would exercise under the same or similar circumstances." J.N., 74 Wn. App. at 57 (citing Briscoe v. Sch. Dist. No. 123, Grays Harbor County, 32 Wn.2d 353, 362, 201 P.2d 697 (1949)). "The basic idea is that a school district has the power to control the conduct of its students while they are in school or engaged in school activities, and with that power goes the responsibility of reasonable supervision." Peck v. Siau, 65 Wn. App. 285, 292, 827 P.2d 1108 (1992).

It is also true, however, that a school district may owe its students duties that arise separate and apart from the special relationship that begets the protective duty described above. In particular, when a school district acts as a common carrier to its students, it may also owe them the duty that arises from the carrier-passenger relationship. This circumstance was addressed in Yurkovich v. Rose, 68 Wn. App. 643, 847 P.2d 925 (1993). Therein, a girl was killed in an accident after a school bus driver dropped her off alongside a highway without activating the bus "stop" bar or warning lights, and without ensuring that the student crossed in front of the bus instead of behind it, as regulations required. Yurkovich, 68 Wn. App. at 646. Affirming a directed verdict of negligence, we stated: "Under the common law, school bus operators owe child passengers a duty of the highest degree of care *consistent with the practical operation of the bus.*" Yurkovich, 68 Wn. App. at 648 (emphasis added); accord Webb v. City of Seattle, 22 Wn.2d 596, 602, 157 P.2d 312 (1945)

("[T]hose who convey children to and from school must exercise toward them the highest degree of care *consistent with the practical operation of the conveyance.*" (Emphasis added.)); Leach v. Sch. Dist. No. 322 of Thurston County, 197 Wash. 384, 386, 85 P.2d 666 (1938); Phillips v. Hargrove, 161 Wash. 121, 124, 296 P. 559 (1931).

The Quynns assert that, because Lillian was bullied while on the school bus, the school district owed her the heightened standard of care applicable to common carriers. But this contention misses the main point. The school district's duty that was alleged by the Quynns to be breached was not connected to its operation of the conveyance. Rather, the duty arose because of its obligation to supervise its students.

We rejected a related argument in Parrilla v. King County, 138 Wn. App. 427, 157 P.3d 879 (2007). In that case, a passenger on a King County Metro bus was acting in an erratic and threatening fashion. The bus driver responded by fleeing the bus, leaving the passenger on board with the bus running. The passenger then commandeered the bus and ran it into a car, whose owner and passengers sued the bus owner. Parrilla, 138 Wn. App. at 430-31. Although we determined that the bus owner owed a duty of ordinary care to the injured third parties because the driver knew or should have known that the passenger was dangerous, we rejected the imposition of a heightened duty notwithstanding the bus owner's status as a common carrier. Parrilla, 138 Wn. App. at 442-43.

Herein, the Quynns assert that the school district was negligent for failing to protect Lillian from certain foreseeable harm, namely harassment, intimidation,

or bullying from other students. While it is true that the district's alleged failure of care occurred while the students involved were riding a school bus, the alleged failure was wholly unrelated to the practical operation of the bus. As the trial court noted, accepting the Quynns' view of the law would create an illogical anomaly: "if the same exact things [alleged to have occurred herein] happened in the lunchroom, the school district would have a different standard of care." The Quynns' negligence claim did not implicate the high standard of care attached to the operation of a common carrier. Instead, it invoked the lower standard of care corresponding to the relevant duty to protect.

Instruction 15 was not erroneous on the basis that it did not assign to the district the heightened duty of care applicable to a common carrier.

B

The Quynns' next challenge to Instruction 15 concerns its definition of "harassment, intimidation, and bullying." The Quynns excepted to the instruction at trial, contending that this part of the instruction was both unnecessary and inaccurate. They raise the same objection on appeal. They are correct.

The challenged portion of the instruction reads:

Harassment, intimidation and bullying means any intentionally written or verbal or physical act when the intentional electronic, written, verbal, or physical act:

a) Physically harms a student or damages the student's property; or
b) Has the effect of substantially interfering with a student's education; or
c) Is so severe, persistent, or pervasive that it creates an intimidating or threatening educational environment; or
d) Has the effect of substantially disrupting the orderly operation of the school.

The quoted language is lifted from a statutory provision requiring school districts to adopt policies and procedures prohibiting "harassment, intimidation, or bullying," as defined therein, and to administer those policies in accordance with rules promulgated by the Superintendent of Public Instruction. RCW 28A.300.285(1), (2).[3] But that statute does not create a private right of action. And the Quynns' lawsuit was not brought pursuant to that statute.

Rather, the Quynns brought a common law tort action—the same type of action as was prosecuted in McLeod. However, by imposing on their claim the administrative definition of "harassment, intimidation, and bullying," the trial court improperly restricted the scope of the tort claim while requiring enhanced elements of proof in order for the Quynns to prevail. In so doing, the court erred.

Lillian claimed that she had been harassed on a school bus. For the Quynns to prevail in the lawsuit, Instruction 15 required not only that the fact of such harassment be established but that the harassment be proved to have been of a type described in sections (a), (b), (c), or (d) of the instruction. No such requirement exists in tort law.

To prove their claim, for instance, pursuant to section (d), the Quynns were required to prove that Lillian was subjected to harassing actions *and* that the harassment "substantially disrupt[ed] the orderly operation of the school." No such requirement was imposed on the rape victim in McLeod.

---

[3] The phrase "harassment, intimidation, and bullying" is used in RCW 28A.300.285's section heading and in subsection (4)(a). The phrase "harassment, intimidation, or bullying" is used in subsections (1), (2), (3), and (5).

To prove their claim pursuant to section (c), the Quynns were required to prove that Lillian was subjected to harassing actions *and* that the harassment "create[d] an intimidating or threatening educational environment." No such requirement was imposed on the rape victim in McLeod.

To prove their claim pursuant to section (b), the Quynns were required to prove that Lillian was subjected to harassing actions *and* that the harassment "interfer[ed] with a student's education." No such requirement was imposed on the rape victim in McLeod.

To prove their claim pursuant to section (a), the Quynns were required to prove that Lillian was subjected to harassing actions *and* that she suffered "physical[ ] harm[ ]." No such requirement was imposed on the rape victim in McLeod. Indeed, to suggest that a bullied student cannot recover for emotional or psychological harm in the absence of actual physical injury runs completely counter to the analysis in McLeod.

The administrative procedures required by RCW 28A.300.285 focus on the school district's educational mission. Hence, the various references to "educational environment," "student's education," "orderly operation of the school," and the like.

The tort duty imposed by law, on the other hand, is focused on the personal safety of the student. The district has a duty to prevent a foreseeable rape regardless of whether a student can be raped without altering the overall "orderly operation of the school." So does the district have the obligation to

prevent foreseeable harassment. But Instruction 15 misinformed the jury on this issue. The trial court erred by so instructing the jurors.

C

The Quynns next contend that Instruction 15 incompletely, and thus incorrectly, informed the jury regarding the duty owed to Lillian by the district. A recent decision from this court supports their contention.

The first paragraph of Instruction 15 is the focus of this claim of error. It reads:

> A school district has a duty to take ordinary care to prevent harassment, intimidation and bullying of one student by another if it knows or has reason to know that a student is the subject of harassment, intimidation or bullying by another student.

The Quynns requested that the trial court instruct the jury as follows:

> Defendant, as a school district, owes to its students a duty to anticipate reasonably foreseeable dangers and take precautions to protect its students from such dangers, including the harmful actions of other students.

We recently discussed the relationship between an ordinary care instruction, such as the one given herein, and the special relationship owed to a student by a school district.

> Well established case law imposes a duty on a school district to exercise reasonable care to protect students in its custody from foreseeable harm. McLeod, 42 Wn.2d at 320; Christensen v. Royal Sch. Dist. No. 160, 156 Wn.2d 62, 70, 124 P.3d 283 (2005).
> McLeod identifies two factors that determine the scope of the legal duty of a school district. First, there is the special relationship where the "protective custody of teachers is mandatorily substituted for that of the parent." McLeod, 42 Wn.2d at 319.

> The relationship here in question is that of school district and school child. It is not a voluntary relationship. The

-11-

child is compelled to attend school. He must yield obedience to school rules and discipline formulated and enforced pursuant to statute. . . . The result is that the protective custody of teachers is mandatorily substituted for that of the parent.

The duty which this relationship places upon the school district has been stated in the Briscoe case . . . as follows:

"As a correlative of this right on the part of a school district to enforce, as against the pupils, rules and regulations prescribed by the state board of education and the superintendent of public instruction, a duty is imposed by law on the school district to take certain precautions to protect the pupils in its custody from dangers reasonably to be anticipated."

McLeod, 42 Wn.2d at 319-20 (quoting Briscoe v. Sch. Dist. No. 123, 32 Wn.2d 353, 362, 201 P.2d 697 (1949)). Second, there is "the duty of a school district . . . to *anticipate dangers which may reasonably be anticipated*, and to *then take precautions* to protect the pupils in its custody from such dangers." McLeod, 42 Wn.2d at 320. A school district must "exercise such care as an ordinarily reasonable and prudent person would exercise under the same or similar circumstances." Briscoe, 32 Wn.2d at 362.

. . . .

We hold the court erred in failing to give jury instructions on the special relationship and duty of the School District to exercise reasonable care to protect students from foreseeable harm. Because the instructions given allowed the jury to apply an ordinary negligence standard without regard to the special relationship and duty of the School District, the error was not harmless and prevented Hopkins from arguing his theory of the case.

Hopkins v. Seattle Pub. Sch. Dist. No. 1, No. 73147-5-I, 2016 WL 3960844, at *5-*6 (Wash. Ct. App. July 18, 2016) (emphasis added).

When determining whether a school district had a duty to protect its students from foreseeable harm, "the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a *general field of danger* which should have

been anticipated." McLeod, 42 Wn.2d at 321 (emphasis added); accord J.N., 74 Wn. App. at 57 ("In order to establish foreseeability, 'the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant.'" (quoting Maltman v. Sauer, 84 Wn.2d 975, 981, 530 P.2d 254 (1975))); see also N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 175 Wn. App. 517, 526, 307 P.3d 730 (2013) (duty predicated on a protective relationship requires knowledge only of the "general field of danger" within which the harm occurred).

The existence of a duty is a question of law reviewed de novo. Parrilla, 138 Wn. App. at 432; accord Christensen, 156 Wn.2d at 67. Whether the general field of danger should have been anticipated by a defendant is normally an issue for the jury. Christen v. Lee, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989); Rikstad v. Holmberg, 76 Wn.2d 265, 270, 456 P.2d 355 (1969).

A problem similar to that in Hopkins is present herein. Rather than informing the jurors that the district was required to "anticipate dangers which may reasonably be anticipated," McLeod, 42 Wn.2d at 320, Instruction 15 informed the jury that the district was without a duty to act to prevent harassment before it occurred ("knows or has reason to know" of actual acts of harassment). The instruction was also unclear as to whether the "student" referenced in the instruction was necessarily the plaintiff-student or whether it could refer to a different student. Indeed, if applied to the claim in McLeod, Instruction 15 would have precluded recovery because the rape at issue was the first rape on campus. The McLeod court did not announce as the law such a "one free rape"

rule,[4] and Instruction 15 misstated the law by telling jurors that the district's duty to protect its students arose only after actual tortious acts occurred.

The school district had a duty to "reasonably anticipate" and "take precautions" to prevent harms falling "within a general field of danger which should have been anticipated." McLeod, 42 Wn.2d at 321. Instruction 15 did not tell the jury this. Instead, Instruction 15 told the jury that the district was required to react after the fact to preclude recurrences of tortious behavior. Moreover, the instruction was unclear as to whether the predicate acts had to have victimized the plaintiff-student or whether victimization of different students were sufficient predicate acts. This was expressed in a confusing way, we suspect, because it is not the law. When foreseeable, the district must anticipate and prevent the first harm from occurring.

The district avers that this claim of error was not properly preserved. We addressed a similar assertion in Hopkins:

> We review the decision not to give a jury instruction for abuse of discretion. Fergen v. Sestero, 182 Wn.2d 794, 802, 346 P.3d 708 (2015). A trial court need not "'give a requested instruction that is erroneous in any respect.'" Crossen v. Skagit County, 100 Wn.2d 355, 360, 669 P.2d 1244 (1983) (quoting Vogel v. Alaska S.S. Co., 69 Wn.2d 497, 503, 419 P.2d 141 (1966)).
> However, even if Hopkins' proposed instructions contained more language than was appropriate, we conclude Hopkins preserved his right to challenge the instructions given as legally erroneous. The undisputed record establishes Hopkins objected not only to the refusal to give his proposed instructions, but also to the failure of the court to give a jury instruction on the duty of the School District to protect a student from foreseeable harm. See Washburn v. City of Federal Way, 178 Wn.2d 732, 748, 310 P.3d 1275 (2013) (Because the City objected not only to the refusal to give its public duty doctrine instruction but also objected to giving proposed instructions, the objection was preserved.); Joyce v. Dep't

---

[4] S.S. v. Alexander, 143 Wn. App. 75, 110, 177 P.3d 724 (2008).

of Corr., 155 Wn.2d 306, 325, 119 P.3d 825 (2005) (The Department properly objected to legally erroneous jury instructions that prevented the Department from arguing its theory of the case.).

The purpose of CR 51(f) is to apprise the trial judge of the nature and substance of the objection. Crossen, 100 Wn.2d at 358. The record shows Hopkins repeatedly cited the leading Washington Supreme Court case on the special relationship and duty of the School District to argue that the court must give an instruction on the duty of the School District and foreseeability.

> School districts owe a duty to protect the pupils in its custody from dangers reasonably to be anticipated— including the foreseeable misconduct of third-parties, like E.E. Under well-established principles, when a pupil attends a school, he or she is subject to the rules and discipline of the school, and the protective custody of the teachers is substituted for that of the parent[ "to protect the pupils in its custody from dangers reasonably to be anticipated."] . . . McLeod, 42 Wn.2d at 319.

Hopkins repeatedly objected to the failure to give a jury instruction on "the specific duty owed by a public [school] to its student, or the school's duty to protect Mr. Hopkins from the foreseeable misconduct of third parties" as legal error.

We conclude the record establishes Hopkins clearly and unequivocally stated the failure to instruct the jury on the duty of the School District and foreseeability was an error of law.

Hopkins, 2016 WL 3960844, at *4-*5.

The same is so herein. While the Quynns' proposed instruction contained a second sentence (not quoted above) that was surplusage, it is clear that the trial court was well aware of their legal position and the nature of their objections. Pursuant to Hopkins, the claim of error was adequately preserved.

Instruction 15 was erroneous for the reasons stated. A new trial is required.

Reversed.

_D urger, J._

We concur:

_Trickry, ACJ_          _Becker, J._