IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HEIDI JO HENDRICKSON, a single person, | ) ) ) | No. 34197-6-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| MOSES LAKE SCHOOL DISTRICT, a municipal corporation, | ) ) ) | |
| Respondent. | ) ) | |

PENNELL, J. — School districts have a special duty to protect students in their custody and care. Heidi Jo Hendrickson claims the Moses Lake School District (the district) violated this duty when she severed her thumb during shop class. At trial, the court declined to issue a jury instruction on the district's enhanced duty of care. Instead, the instructions were limited to ordinary principles of duty and contributory negligence. We agree with Ms. Hendrickson that the trial court should have instructed the jury about the district's heightened duty of care. However, contributory negligence remained applicable. Because the inadequate instruction about the district's duty could have impacted the jury's verdict, this matter is remanded for retrial.

## FACTS

Fifteen-year-old freshman Heidi Hendrickson injured herself while working on a project for shop class. Using a push stick, Ms. Hendrickson guided a board through a table saw to make a small cut. When she felt the board come to a stop, she became scared. She set the push stick down, tried to wiggle the board free, and cut her right thumb. At the time Ms. Hendrickson cut herself, Kevin Chestnut, her shop teacher, could see the table saw area but was standing in a fenced area outside the back of the room. As a result of that cut, doctors amputated Ms. Hendrickson's thumb to her first joint. Ms. Hendrickson sued the district, alleging negligence in that the district (1) failed to use and maintain required safety equipment and guards, (2) failed to provide her with reasonable instruction, and/or (3) failed to reasonably supervise her on the use of the table saw.

At trial, Mr. Chestnut testified about how he trains students to use the table saw. After demonstrating two different types of cuts, the students would make those cuts one at a time until they performed the cut correctly. The students then took a written test. Once they passed the test, Mr. Chestnut would supervise the students over the next six weeks as they made 40-50 cuts. If the students earned his trust, Mr. Chestnut allowed them to use the table saw on their own. Specifically regarding the safe use of the table saw, Mr. Chestnut testified he told the students to always use a push stick when making

2

their cuts and to turn off the table saw if anything unusual happens. Mr. Chestnut also stated he removed the anti-kickback device and the splitter from the table saw because, if those components became misaligned, operating the table saw could be "extremely dangerous." 5 Verbatim Report of Proceedings (Feb. 1, 2016) at 925. According to Mr. Chestnut, Ms. Hendrickson made 40-50 cuts correctly before he allowed her to use the saw on her own. At the time of her injury, Ms. Hendrickson had made approximately 100 cuts.

Before submitting the case to the jury, the trial court heard extensive argument on jury instructions. Ms. Hendrickson proposed the following instruction:

> A school district has a "special relationship" with a student in its custody and a heightened duty of care to protect him or her from foreseeable harm. Harm is foreseeable if the risk from which it results was known, or in the exercise of reasonable care should have been known. The imposition of this duty is based on the placement of the student in the care of the school with the resulting loss of the student's ability to protect himself or herself. The relationship between a school district and a student is not a voluntary relationship, as children are required by law to attend school. The protective custody of teachers is thus mandatorily substituted for that of the parent.

Clerk's Papers (CP) at 1308. The court declined to give that instruction, instead instructing the jury as follows:

3

No. 34197-6-III
*Hendrickson v. Moses Lake Sch. Dist.*

INSTRUCTION NO. 12
Negligence is the failure to exercise ordinary care. It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances.

INSTRUCTION NO. 13
Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances.

INSTRUCTION NO. 14
When referring to a child, ordinary care means the same care that a reasonably careful child of the same age, intelligence, maturity, training, and experience would exercise under the same or similar circumstances.

. . . .

INSTRUCTION NO. 18
Every person has the right to assume that others will exercise ordinary care, and a person has a right to proceed on such assumption until he or she knows, or in the exercise of ordinary care should know, to the contrary.

CP at 1528-30, 1534. Ms. Hendrickson filed a written exception to the court's refusal to give the special relationship instruction.

Additionally over Ms. Hendrickson's objection, the trial court instructed the jury on the district's affirmative defense of Ms. Hendrickson's contributory negligence. The district claimed Ms. Hendrickson's injuries were proximately caused by her (1) failure to use a push stick while operating the table saw and (2) failure to turn off the table saw after the board became stuck in the saw. The district emphasized Ms. Hendrickson's

4

alleged contributory negligence in its closing argument to the jury.

The jury found the district was negligent. However, the jury also found the district's negligence was not a proximate cause of Ms. Hendrickson's injury. The court entered judgment on the verdict. Ms. Hendrickson appeals.

ANALYSIS

This court reviews legal errors in jury instructions de novo. *Hopkins v. Seattle Pub. Sch. Dist. No. 1*, 195 Wn. App. 96, 106, 380 P.3d 584, *review denied*, 186 Wn.2d 1029, 385 P.3d 123 (2016). Jury instructions are sufficient if they are supported by the evidence, allow each party to argue its theory of the case, are not misleading, and properly inform the trier of fact of the applicable law when read as a whole. *Id.* An instruction is erroneous if any of these elements is absent. *Id.* If an instruction misstates the law, prejudice is presumed and is grounds for reversal unless the error was harmless. *Id.*

*Jury instructions and the district's duty*

There is no serious dispute over whether the trial court should have issued an instruction explaining the district's heightened duty of care. School districts have a special relationship with the students in their custody. *Id.* Based on this relationship, school districts have a duty "to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in [their] custody from such dangers."

*McLeod v. Grant County Sch. Dist.*, 42 Wn.2d 316, 320, 255 P.2d 360 (1953). Jurors are entitled to receive instructions on the unique nature of a school district's duty of care. *Hopkins*, 195 Wn. App. at 108. The failure to provide such instruction is error. *Id.* Given this legal landscape, the trial court should have provided an instruction explaining the district's enhanced duty of care.[1] The only real argument is whether the absence of such an instruction prejudiced the jury's verdict.

The disagreement over prejudice stems from the unique nature of the jury's verdict. Had the jury found the district was not negligent, it would not have reached the question of proximate cause and prejudice would easily have been presumed. *Id.* at 104, 108; *Quynn v. Bellevue Sch. Dist.*, 195 Wn. App. 627, 631, 643, 383 P.3d 1053 (2016). But the jury did find the district negligent. It only denied relief to Ms. Hendrickson through its determination of proximate cause. Based on this unique context, the district argues the jury's verdict would have been the same regardless of an instruction on an enhanced duty of care. Because there was no causal link between the district's conduct and Ms. Hendrickson's injuries, the district claims the rejection of Ms. Hendrickson's

---

[1] Despite the long-standing rule regarding school districts' enhanced duty of care, case law requiring this duty to be spelled out to the jury did not arise until after Ms. Hendrickson's trial. *Quynn v. Bellevue Sch. Dist.*, 195 Wn. App. 627, 383 P.3d 1053 (2016); *Hopkins*, 195 Wn. App. 96. The trial court did not have the benefit of these decisions at the time it issued the instructions.

proffered instruction could not have impacted the jury's verdict. *See Griffin v. W. RS, Inc.*, 143 Wn.2d 81, 88, 18 P.3d 558 (2001).

The district's analysis of prejudice would have force if Ms. Hendrickson had only alleged one theory of negligence. Breach of a lesser duty necessarily implies breach of a corresponding greater duty. If there is no causal connection between the breach of a lesser duty and the plaintiff's injuries, then there is necessarily no causal connection between the breach of a greater duty and the plaintiff's injuries. *See id.* (instructing on a heightened duty "would matter only if the jury had rejected breach of the lesser included duty").

But Ms. Hendrickson alleged three distinct types of duties and breach. The jury made no findings as to whether negligence pertained to one theory, two, or all three. If the jury had found negligence as to all three theories, but no proximate cause, the analysis would be the same as if there had only been one theory of negligence. Yet as the district recognizes, it is possible, if not probable, that the jury found the district negligent as to only one of Ms. Hendrickson's theories. Specifically, given Mr. Chestnut's testimony that he removed the table saw's anti-kickback device and splitter, the jury could have found the district negligent based on Ms. Hendrickson's theory that the district breached its duty to reasonably maintain safety equipment. There were facts at trial suggesting that

the removed equipment would not have prevented Ms. Hendrickson's injuries. This is a likely explanation of the jury's verdict.

Had the jury actually found breach under less than all three of Ms. Hendrickson's theories, then the failure to advise the jury as to the district's enhanced duty of care could have made a difference. *See id.* at 89 (recognizing the causation analysis would be different if the plaintiff identifies additional duties). Taking the above example, it is possible the jury found the district was negligent in failing to maintain equipment while also finding no breach of an ordinary duty to provide instruction or supervision. However, had the jury been instructed correctly, it would have understood the district had not just an ordinary duty of care, but a heightened obligation that also encompassed protecting Ms. Hendrickson against reasonably foreseeable self-inflicted harm. *See McLeod*, 42 Wn.2d at 321 (enhanced duty of care includes duty to protect against foreseeable student misconduct). This more thorough understanding of the district's duties could have led the jury to believe Mr. Chestnut should have done more to prevent Ms. Hendrickson's injuries. Accordingly, the jury's assessment of proximate cause and the final verdict could have been different.

Despite this analytical possibility, the district appears to claim there was no realistic chance for Mr. Chestnut to provide additional supervision or instruction. We

No. 34197-6-III
*Hendrickson v. Moses Lake Sch. Dist.*

disagree. Mr. Chestnut was stationed 25-30 feet away from Ms. Hendrickson at the time of her injury and was focused on other students. It is possible the jury could have found this inattention to be a breach of the enhanced duty of care and supervision. Had Mr. Chestnut worked more closely with Ms. Hendrickson, he might have been able to see when she ran into problems and provide appropriate instruction on injury avoidance. The question of whether this was reasonably possible is something a jury must consider, after receiving accurate instructions. It is not something this court will resolve on appeal.

*Jury instructions and contributory negligence*

Not only does Ms. Hendrickson claim she was entitled to an instruction on the district's enhanced duty of care and protection, she also argues this enhanced duty prohibits the district from asserting contributory negligence. This latter position goes too far.

The default rule in Washington is one of contributory negligence. RCW 4.22.005. Our case law has long held students responsible for negligent conduct on school grounds. *Briscoe v. Sch. Dist. No. 123*, 32 Wn.2d 353, 366, 201 P.2d 697 (1949). We have even applied contributory negligence against students in circumstances where a school district owes its highest duty of care as a common school bus carrier. *Yurkovich v. Rose*, 68 Wn. App. 643, 655-56, 847 P.2d 925 (1993). Although school districts owe students a

9

heightened duty of care, our case law makes clear they are not guarantors of student safety. *Id.* at 654-55. We have recognized a jury can consider a student's own misconduct or negligence in assessing issues such as proximate cause or damages. *Id.*

Ms. Hendrickson claims the Washington Supreme Court altered the legal landscape on school-based contributory negligence through its decisions in *Christensen v. Royal School District No. 160*, 156 Wn.2d 62, 124 P.3d 283 (2005), and *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 244 P.3d 924 (2010). *Christensen* held contributory negligence could not be assessed against a 13-year-old student who brought a claim against a school district for sexual abuse by a teacher. *Gregoire* involved the custodial relationship between an inmate and a jail. A plurality of our Supreme Court determined contributory negligence may not always be raised when a claim is made against a correctional institution for injuries resulting from an inmate's intentional self-harm.

*Christensen* and *Gregoire* carved out exceptions to the general rule of comparative fault based on unique policy concerns. *Christensen*, 156 Wn.2d at 68-69; *Gregoire*, 170 Wn.2d at 637-38. Because children under 16 years of age are not competent to consent to sex under our state's criminal code, *Christensen* held they also cannot be held responsible for failing to protect themselves from entering into a sexual relationship. *Christensen*, 156 Wn.2d at 67-68. In *Gregoire*, the justices in the plurality were concerned with

10

ensuring correctional institutions retained an incentive to follow through with the duty of protecting inmates against self-harm. Because defenses such as assumption of risk and contributory negligence threatened to "immunize" institutions from breaching this duty, the justices declined to allow such defenses as contrary to public policy. *Gregoire*, 170 Wn.2d at 637.[2]

Neither *Christensen* nor *Gregoire* abrogated the general rule[3] that a defendant's special relationship to a plaintiff does not make the defendant the guarantor of the plaintiff's safety, thus eliminating comparative fault. Indeed, if all that were necessary to deny comparative fault was the existence of a special relationship, much of the analysis in *Christensen* would be rendered dicta. Never mind *Christensen*'s lengthy discussion of public policy and explicit statement that the decision was specific to the context of child sexual assault, the decision could have been rendered simply based on the well-established rule that the school district had a heightened duty to protect its student from

---

[2] Former Chief Justice Madsen, whose concurrence was pivotal in reversing the Court of Appeals decision, agreed with the majority's analysis with respect to the defense of assumption of risk but favored limits on restricting the defense of contributory negligence to circumstances where a correctional institution has assumed an inmate's duty of self-care. *Gregoire*, 170 Wn.2d at 645 (Madsen, C.J., concurring/dissenting).

[3] *See, e.g.*, *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 203-04, 943 P.2d 286 (1997). Contrary to Ms. Hendrickson's position, the Restatement of Torts does not create a new general rule, eliminating contributory negligence in the context of special relationships.

11

foreseeable harms. As recognized by then Chief Justice Madsen in *Gregoire*, this was not the case: *Christensen*'s "holding was unique to sexual abuse." *Gregoire*, 170 Wn.2d at 650 (Madsen, C.J., concurring/dissenting). Our reading of *Christensen* and *Gregoire* is that both decisions are context specific and do not fully alter a plaintiff's duty of self-care in the custodial settings of a school or penal institution.

Ms. Hendrickson's arguments against application of contributory negligence can only succeed if, like the plaintiffs in *Christensen* and *Gregoire*, she can articulate a context-specific reason for eliminating contributory negligence. None has been proffered, and we cannot discern any on our own. There is no legal bar to Ms. Hendrickson's capacity to consent to using a table saw. Thus, this case is unlike *Christensen*.[4] Unlike *Gregoire*, this case does not pose the public policy problem of how to incentivize a legal custodian to prevent self-harm. Ms. Hendrickson was not engaged in intentional self-harm, and application of contributory fault to her conduct would not effectively immunize the district from liability. Because there are no unique policy reasons for excluding application of contributory negligence in Ms. Hendrickson's case, this aspect of the trial court's instructions was appropriate. On remand, the trial court shall continue to instruct

---

[4] Even legal incapacity is not necessarily a bar to contributory negligence. *See Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 481, 951 P.2d 749 (1998).

the jury on contributory fault.

## CONCLUSION

The failure to instruct the jury on the special relationship between a school district

and its students was prejudicial error. We reverse the trial court's judgment and remand

for a new trial.

_____
Pennell, J.

I CONCUR:

_____
Siddoway, J.

34197-6-III

KORSMO, J. (dissenting) — The jury determination that Ms. Hendrickson was the cause of her own injury should be dispositive here. The error in instructing the jury on the school district's heightened duty of care was harmless in this circumstance.

I agree with the majority and the recent authority indicating that the plaintiff was entitled to an instruction indicating that the school district had a special relationship to the children in its care. *Quynn v. Bellevue Sch. Dist.*, 195 Wn. App. 627, 383 P.3d 1053 (2016); *Hopkins v. Seattle Pub. Sch. Dist. No. 1*, 195 Wn. App. 96, 380 P.3d 584, *review denied*, 186 Wn.2d 1029 (2016). It was error to refuse the requested instruction. That error was meaningless here, though.

In both *Quynn* and *Hopkins*, the jury declined to find the district negligent under the general negligence standard. The error in incorrectly defining the district's obligations was therefore prejudicial. That is not the case here since the jury concluded that the district's negligence was not the cause of the injury. Appellant speculates that maybe one of her theories of negligence was not accepted by the jury, but would have been accepted if the jury had been properly instructed. The problem with the argument is that she was able to argue all of her theories to the jury and they concluded that whatever

negligence the district committed was not the cause of the plaintiff's injury. The jury heard every theory of liability Ms. Hendrickson had and determined none of them were the cause of the accident. That should be the end of the case.

It would be a different story if Ms. Hendrickson had been unable to assert one of her theories due to the lack of the instruction. But that is not the case here. Schools are not insurers of students' safety. The district here did everything it could to train this young lady to handle the table saw safely. She was no novice, but was quite experienced in the correct methods of operating the saw. It simply is not practical to monitor every student from a few feet away unless you reduce the class size to one or two students. The jury understandably considered, but rejected, any claim that the teacher was not close enough to oversee Ms. Hendrickson's work. That would not change if the jury had been instructed on the special relationship because it is not possible to monitor every child all of the time. Ms. Hendrickson caused this accident by not operating the saw in accordance with her training.

I think we should affirm the jury's verdict.

_____
Korsmo, J.